United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MONTEREY BAY BOATWORKS COMPANY, a California Limited Partnership,<br><br>            Plaintiff,<br><br>   v.<br><br>MICHAEL FORMICO and M/V WILD WAVE (Official Number 550855) and her engines, boiler, tackle, apparel, furnishings, and appurtenances, etc. <u>in rem</u>,<br><br>            Defendants. | Case No.  5:12-cv-04544 HRL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  Dkt. No. 70] |

Plaintiff Monterey Bay Boatworks (MBB) filed this admiralty action in rem against the M/V Wild Wave and in personam against its owner, Michael Formico, for unpaid repair work. Before the court is MBB's motion for summary judgment and for entry of judgment in the amount $113,076.10, which MBB says are the fees and costs it has incurred, less the purchase price of the vessel. The court received no written opposition or response to MBB's motion. However, Formico appeared for oral argument to state his opposition to the motion. At the court's direction, plaintiff's counsel subsequently submitted his time records for an *in camera* review. Based upon its review of those records, as well as consideration of MBB's moving papers and the arguments

presented at the hearing, the court grants the motion, with some modification.[1]

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed:

On July 6, 2011, Formico entered a work order agreement for services to be performed by MBB on the M/V Wild Wave. Formico subsequently requested that additional work be done. (Maiorana Decl. ¶ 5a). As of August 31, 2011, MBB says that Formico owed over $11,000 for labor, parts, and lay day fees. Around January 25, 2012, one Cindy Krueger paid $3,000 on Formico's behalf. MBB says that no other payments have been made since then. (Id. ¶ 7). It filed the instant lawsuit to arrest the M/V Wild Wave and enforce its maritime lien.

Judge Koh, who previously presided over this matter, issued a warrant for the arrest of the vessel. The U.S. Marshal arrested the M/V Wild Wave on October 31, 2012, and MBB was appointed the vessel's substitute custodian. MBB published notification of the boat's arrest on the court's docket, the San Francisco Daily Journal, and the San Jose Post Record, as required by Admiralty Local Rule 4-1(a) and Civil Local Rule 77-4.

Meanwhile, on October 2, 2012, Formico, proceeding pro se, filed a verified answer to the complaint, denying plaintiff's allegations. Then, on November 14, 2012, he filed a "Statement of Interest; Right to Possession." (Dkt. No. 22). In that statement, Formico requested a hearing at which "Plaintiff shall be required to show cause for arrest or should be vacated [sic] or other relief granted." (Dkt. No. 22 at 2). Finding Formico's request to be unclear, Judge Koh issued an order directing him to file by January 4, 2013 a motion pursuant to Fed. R. Civ. P. E(4)(f), Supplemental Rules for Certain Admiralty and Maritime Claims,[2] if that was what he intended. (Dkt. No. 30).

---

[1] MBB and Formico (the only person having claimed an interest in the vessel) have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] Fed. R. Civ. P. E(4)(f), Supplemental Rules for Certain Admiralty and Maritime Claims, provides, in relevant part: "Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."

2

No such motion was filed.

No one other than Formico made a claim of interest or right to the M/V Wild Wave within the required time period. On December 6, 2012, default was entered as to unnamed persons or entities that failed to plead or otherwise defend or claim an interest in the vessel. (Dkt. No. 27).

Plaintiff then filed a motion for interlocutory sale of the M/V Wild Wave. Upon MBB's and Formico's consent, this action subsequently was reassigned to this court for all purposes. 28 U.S.C. § 636; Fed. R. Civ. P. 73.

Formico did not file any opposition to plaintiff's motion for interlocutory sale. Nor did he appear at the April 16, 2013 motion hearing. Later that same day, the court issued an order granting that motion and setting a May 15, 2013 sale date.

Several weeks later, on May 7, the Dincel Law Group entered an appearance as defense counsel of record. The next day, defendants filed a request to set aside the court's April 16 order, along with a request that the matter be briefed and heard, on one week's notice, on May 14. Defendants having failed to provide any basis for it, their request to set aside the order was denied. Nevertheless, the court gave them an opportunity to tell the court why it should reconsider its decision to allow the M/V Wild Wave to be sold at an interlocutory sale. The matter was briefed on an expedited basis. In its opposition papers, MBB argued that defendants had unreasonably multiplied these proceedings in an eleventh hour attempt to derail the sale; and, pursuant to 28 U.S.C. § 1927, MBB requested sanctions—i.e., payment of its attorney's fees incurred in opposing what it believed was a frivolous motion for reconsideration.

The matter was heard on May 14. Later that same day, the court issued an order denying defendants' request for reconsideration. To the extent Formico said that his actual grievance concerned the amounts being charged by MBB, the court noted that those matters could be addressed following the sale. Plaintiff's request for sanctions was taken under submission.

The sale proceeded on May 15, 2013. The U.S. Marshal sold the M/V Wild Wave by credit bid of $10,000 to MBB. The court subsequently granted MBB's request to confirm the sale of the vessel.

3

1   MBB then filed the instant motion for summary judgment.

2   About a week later, defendants and the Dincel law firm filed a stipulated request that the firm be permitted to withdraw as counsel of record, and Formico indicated that he would proceed pro se. That request was granted. As discussed above, Formico did not file any opposition to the instant motion, but did appear at oral argument to state his position. For the reasons discussed below, the court grants the motion for summary judgment and grants plaintiff's motion for attorney's fees and costs, with some modification.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'"

4

Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. Id.

## DISCUSSION

A maritime lien "has been defined as: (1) a privileged claim, (2) upon maritime property, (3) for service done to it or injury caused by it, (4) accruing from the moment when the claim attaches, (5) traveling with the property unconditionally, (6) enforced by means of an action in rem." Trans-Tec Asia v. M/V Harmony Container, 518 F.3d 1120, 1128 (9th Cir. 2008) (internal quotations and citations omitted). "The lien gives the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds of the sale." Id. "The maritime lien serves the 'dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away.'" Id. (quoting Equilease Corp. v. M/V Sampson, 793 F.2d 598, 602 (5th Cir. 1986) (en banc)). "In other words, a maritime lien may be considered a right based upon the legal fiction that the ship is the wrongdoer—the ship itself caused the loss and can be called to the bar to make good the loss." Id. (internal quotations and citations omitted). Under the Federal Maritime Lien Act (FMLA):

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
>
> (1) has a maritime lien on the vessel;
>
> (2) may bring a civil action in rem to enforce the lien; and
>
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342.[3]

---

[3] This section of the FMLA does not apply to public vessels. 46 U.S.C. § 31342(b). All indications are that the M/V Wild Wave is and was at all times privately owned.

The record presented shows that MBB provided repair services to the M/V Wild Wave as requested by Formico. (Maiorana Decl. ¶¶ 5a, 5b, Exs. 1, 1a-b). The parties' work order agreement permits the recovery of attorney's fees and costs in connection with the amounts owed to MBB:

> **Attorney's Fees**:   In any dispute or legal proceeding arising from this Agreement or [MBB's] work on the Vessel, now or in the future, whether under this Agreement, subsequent oral or written agreement, or otherwise the prevailing party shall be entitled to reasonable attorney fees and costs except as otherwise provided herein.

(Maiorana Decl. ¶ 5a, Ex. 1). Review of the entire work order reveals no exception to the attorney's fees provision. Additionally, the work order states that "Owner agrees to pay [MBB] for storage of the Vessel at its prevailing daily rate for each day the Vessel remains at [MBB]'s facility more than one day after Owner is notified that work is completed." (Id.) According to the work order's rate schedule, lay day fees would initially be assessed at $1.25 per foot per day for five days, and then at a rate of $1.50 per foot per day. (Id. at 2). After one month, lay day fees would be assessed at a rate of $2.00 per foot per day. (Id.). The M/V Wild Wave is 64 feet long. (Id. ¶ 5.d). Formico signed the work order under the statement, "I agree to the terms and conditions set forth herein." (Id. ¶ 5a., Ex. 1).

### A. Sums claimed re M/V Wild Wave

MBB's invoices show that, as of August 31, 2011, Formico owed over $11,000 for services, including labor, parts and lay day fees. (Id., ¶ 5b, Exs. 1a & 1b). Formico contends that defendants told him that the boat had been seized, would not release the boat to him until he paid the money he owed, and overcharged him in the meantime (i.e. he believes that the sums demanded were unfairly increased over time). As discussed above, however, the agreed-upon work order's rate schedule provided for the assessment of fees for every day that the boat was left in the yard after completion of the repair work. (Maiorana Decl., ¶ 5a, Ex. 1). While Formico says that he made numerous efforts to resolve this matter informally, the fact remains that none of those efforts proved successful. It is undisputed that other than a single $3,000 payment made in January 2012, there has been no payment for the repair services. (Id. ¶ 2). The M/V Wild Wave

6

was sold on a $10,000 credit bid by MBB, and there remains a deficiency in the sums MBB says it is owed. Specifically, there is support in the record for $90,840.47 as follows:

- $6,040.47 for vessel repair charges; and
- $84,800 in lay day fees through the sale of the vessel.

(Maiorana Decl. ¶ 8, Exs. 1a, 1b). Plaintiff also seeks $5,200 in custodial fees from the M/V Wild Wave's arrest through the sale of the vessel. However, in her order appointing MBB as the substitute custodian, Judge Koh said that such fees were not to exceed $800 per month; and, she required plaintiff to provide monthly statements setting forth those expenses. (Dkt. 17 at 3). No such invoices having been provided to the court, this court declines to include the $5,200 in the judgment.

### B. Costs

The record contains adequate support for the following costs:

- $350 filing fee (Dkt. 1; Maiorana Decl. ¶ 5.c);
- $268 publication costs for the notice of arrest (Maiorana Decl. ¶ 5.c; see also Dkt. 50-3 at p. 2);
- $799.20 publication costs re sale of vessel (Id.);
- $725.52 U.S. Marshal's costs (Id. ¶ 5.b, Ex. 2); and
- $99 service of process (MBB claims $230 for service of process (Maiorana Decl. ¶ 5.c), and counsel's billings statements indicate that plaintiff did incur expenses in that amount for a process server. However, it is unclear what those services were for. The docket indicates that service of process was effected on September 11, 2012, see Dkt. 13, and records before the court show that MBB incurred only $99 for that effort.)

Accordingly, MBB will be awarded a total of $2,241.72 in costs.

### C. Claimed Attorney's Fees

As for its legal expenses, MBB says that it incurred $24,662.89 in attorney's fees and $292.88 in other legal expenses. (Maiorana Decl. ¶ 5d; Birnberg Decl. ¶ 3). "California Civil

7

Code Section 1717(a) allows attorneys' fees to be awarded as costs whenever the contract under which the claim is asserted contains a provision for awarding attorneys' fees." Robert E. Blake, Inc. v. Excel Envtl., 104 F.3d 1158, 1163 (9th Cir. 1997). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983). In determining a reasonable number of hours, the court must review detailed time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative, or excessive. Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987).

### 1. Reasonableness of Rate Charged

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Chalmers, 796 F.2d at 1210-11 (citing Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L.Ed.2d 891 (1984)). "Generally, the relevant community is the forum in which the district court sits." Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997) (citing Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991)). The fee applicant has the burden of producing evidence, other than declarations of interested counsel, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Blum, 465 U.S. at 896 n.11. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1993).

MBB's counsel avers that he has a master of law degree in Admiralty and has practiced maritime law since 1984. (Birnberg Decl. ¶ 2). He further states that courts have regularly approved his customary $425 hourly fee for maritime cases. (Id.). For this case, however, he

8

agreed to reduce his rate to $200 per hour. (Id. ¶ 3). Defendants have not raised any issue with respect to the rates charged or the skill and experience of MBB's counsel. Additionally, the court can also rely on its own knowledge and experience in evaluating a request for fees. Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (agreeing that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."). This court is familiar with the range of rates customarily charged by attorneys practicing before it, and the stated hourly rates appear to be commensurate with those charged for cases of this magnitude and complexity and for similar work performed by attorneys of comparable skill, experience, and reputation.

### 2. Reasonableness of Hours and Other Legal Expenses

Having reviewed MBB's counsel's time records *in camera*, this court is prepared to award plaintiff's requested fees and expenses, with some deductions:

- Time sheets indicate that some time was incurred by someone (unidentified) who billed at a rate of $125/hour. The biller being unidentified, and there being no explanation as to the $125 rate, the court is unable to assess the reasonableness of the rate charged or the time incurred. Those fees ($600.00 in total) are not adequately supported and will be deducted from the requested fee award.
- $1,000 for time incurred on May 13, 2013 to attend the hearing on defendants' motion for reconsideration will be deducted because that particular entry appears to duplicate time spent preparing for and attending that hearing, which is accounted for elsewhere in counsel's timesheets.
- $700 for time incurred on May 16, 2013 for the hearing on defendants' motion for reconsideration will be deducted. That motion was heard on May 14, and time spent preparing for and attending that hearing are accounted for elsewhere in counsel's timesheets.
- $240 will be deducted from time spent on May 17, 2013 preparing motion papers re confirmation of the sale of the vessel, as the court finds the claimed hours incurred

9

to be excessive given the relatively straightforward nature of those filings.

- $160 will be deducted from time spent on June 17 and 18, 2013 preparing a request for telephonic appearance, as the court finds the claimed time incurred to be excessive given the relatively straightforward nature of that filing.

This court is otherwise satisfied that the hours claimed by MBB are adequately documented and were reasonably incurred, including for time spent opposing defendants' motion for reconsideration.[4]  Additionally, MBB claims $292.88 in legal expenses (apart from the costs discussed above in Section B).  Counsel's timesheets demonstrate that counsel's expenses are justified and, further, the requested sum is much lower than the costs counsel actually incurred. Accordingly, the court will award MBB its requested fees and legal expenses in the modified amount of $22,255.77.

The sum of plaintiff's claimed fees and costs, less the $10,000 purchase price of the vessel, leaves a total judgment of $105,337.96.

## ORDER

Based on the foregoing, plaintiff's summary judgment motion is granted.  The clerk shall enter judgment for plaintiff in the amount $105,337.96 and close the file.

SO ORDERED.

Dated:   September 30, 2014

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the court is awarding MBB its fees pursuant to the parties' work order agreement, MBB's motion for sanctions is denied as moot.

10

5:12-cv-04544-HRL Notice has been electronically mailed to:

Cory A. Birnberg     birnberg@birnberg.com, norma@birnberg.com, recept@birnberg.com

5:12-cv-04544-HRL Notice sent by U.S. Mail to:

Michael Formico
14636 Firestone Drive
Saratoga, CA 95070

      Pro Se Defendant

11